# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

| | | |
|---|---|---|
| TRABIAN JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:14-cv-31 (WLS) |
| | : | |
| VINCENT EDMOND, individually, | : | |
| ERIC BRINSON, individually, and | : | |
| WILEY GRIFFIN, JR., individually, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER

Before the Court are Defendant Eric Brinson's Motion to Dismiss (Doc. 7), Motion to Dismiss First Amended Complaint (Doc. 19), and Motion to Stay Discovery (Doc. 20) and Defendant Wiley Griffin, Jr.'s Motion to Dismiss (Doc. 22). For the following reasons, Defendant Brinson's Motion to Dismiss (Doc. 7) and Motion to Stay Discovery (Doc. 20) are **DENIED as moot** and Defendant Brinson's Motion to Dismiss First Amended Complaint (Doc. 19) and Defendant Griffin's Motion to Dismiss (Doc. 22) are **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff Trabian Jones filed his original complaint on February 20, 2014. (Doc. 1.) Defendant Brinson filed his first Motion to Dismiss (Doc. 7), and the Court thereafter granted Plaintiff leave to amend his complaint. (Doc. 14.) In the meantime, the Court granted Defendant Brinson's Motion to Stay Discovery pending resolution of the Motion to Dismiss. (Doc. 13.) On April 30, 2014, Plaintiff filed his amended complaint. (Doc. 15.) Subsequently, Defendants Brinson and Griffin filed Motions to Dismiss Plaintiff's amended complaint. (Docs. 19, 22.) Defendant Brinson also moved to stay discovery pending resolution of his Motion to Dismiss Plaintiff's amended complaint. (Doc. 20.)

## FACTUAL ALLEGATIONS

In his first amended complaint, Plaintiff Jones alleges that on February 25, 2012 the vehicle in which he was a passenger was stopped at a roadblock/checkpoint in Grady County, Georgia. At least three officers were at the roadblock—Defendants Edmond, a Grady County Sheriff's Deputy; Brinson, a Georgia State Patrolman; and Griffin, a Grady County Sheriff's Deputy. Jones alleges that Brinson was the officer in charge at the roadblock. After the vehicle was stopped, Brinson ordered Jones out of the car and patted him down, finding no drugs or weapons on him. Brinson told Jones the officers smelled marijuana in the vehicle, and Jones responded, saying that was not possible. Another passenger in the vehicle, Chad Smith, was patted down and arrested for driving on a suspended license, though he was not the driver of the vehicle. Brinson placed Mr. Smith in the back of the patrol car. While Griffin watched Jones, another officer gave the driver of the vehicle, Shockasha Adair, a roadside sobriety test, which she passed. Another officer also searched the inside of the vehicle for drugs and weapons and found no contraband or weapons. Then, Edmond conducted another pat down search of Jones and searched the trunk of the vehicle. Again, no contraband or weapons were found on Jones or in the trunk of the vehicle.

In the presence of Griffin and Brinson, Edmond ordered Jones to the front passenger side of Brinson's vehicle and directed Jones to lift his shirt and pull down his pants and underwear. Jones protested but ultimately complied, exposing his genitals to public view. Jones characterizes this incident as a strip search but does not allege that Edmond or any other officer placed his hands on Jones while his body was exposed. When Jones asked Edmond if he was being detained during the strip search, Edmond responded affirmatively. The strip search revealed no contraband or weapons.

After the strip search, either Brinson or Griffin or both told the driver of Jones' vehicle as well as the driver of the vehicle with which they were caravanning to continue on and gave them Jones' cell phone. After Jones' companions drove away, Jones was informed that he was free to go without a citation. The officers allowed Jones to use Mr. Smith's

phone to call his friends. Jones alleges that he was detained at the roadblock for an hour to an hour and a half.

## DISCUSSION

As an initial matter, the Court **DISMISSES** Defendant Brinson's first Motion to Dismiss (Doc. 7) as moot because an amended complaint and subsequent motion to dismiss, which the Court now considers, were filed. The Court also **DISMISSES** Defendant Brinson's Motion to Stay Discovery (Doc. 20) as moot because discovery has remained stayed since entry of the Court's April 22, 2014 Order staying discovery and because the Court now resolves Brinson's second Motion to Dismiss (Doc. 19).

Jones sues the Defendants in their individual capacities only. Jones does not specifically challenge the legality of the roadblock or the pat down searches to which he was subjected. (Docs. 15 at 10; 24 at 5.)  Jones does allege that Edmond subjected him to an unlawful search and that the strip search constituted excessive force.  Jones alleges that Brinson and Griffin violated his Fourth Amendment rights by failing to intervene in Edmond's unlawful search and use of excessive force and by subjecting him to an unlawful arrest without probable cause. Brinson and Griffin both raise qualified immunity as a defense to Jones' Fourth Amendment claims against them.

## I.    Motion to Dismiss Standard

Defendants Brinson and Griffin each move to dismiss Plaintiff's claims against them based on Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely conceivable, on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care System, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)).  "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set

forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Financial Securities Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw [p]laintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), (abrogated on other grounds by *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702 (2012)). The Supreme Court instructs that in considering a motion to dismiss "a court must accept as true all of the allegations contained in a complaint;" this principle, however, "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

## II.    Qualified Immunity Standard

Both Defendants Brinson and Griffin argue that Jones' claims against them should be dismissed because they are entitled to qualified immunity. Qualified immunity protects government officials from suit in their individual capacities when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Qualified immunity is an affirmative defense, and when it appears on the face of a complaint that a plaintiff has not claimed a violation of clearly established law, it is proper to dismiss the complaint for failure to state a claim upon which relief can be granted. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To properly claim qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotations omitted). Then, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* In order to satisfy this burden, a plaintiff must allege: "(1) that the defendant committed a constitutional violation and that (2) the constitutional right the defendant violated was clearly

established at the time he did it." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir.2004) (quotations omitted).  A right "is clearly established [when] it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "If the law did not put the office *on notice* that his conduct would be *clearly* unlawful . . . qualified immunity is appropriate." *Id.* at 195.

The Court finds as an initial matter that, taking the facts alleged by Jones as true, both Brinson and Griffin were acting within the scope of their discretionary authority throughout the course of events alleged in Jones' amended complaint. Both Brinson and Griffin were on-duty law enforcement officers working a roadblock. The Court finds that the stop of Jones' vehicle and the subsequent searches were conducted pursuant to the typical job duties of law enforcement officers, which include traffic stops and searches. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). Having found that Brinson and Griffin were both acting within the scope of their discretionary authority, the Court will now consider whether Jones' amended complaint alleges that Brinson and Griffin committed constitutional violations and whether the constitutional rights allegedly violated were clearly established at the time of the incident.

## III.   Jones' Unreasonable Search and Seizure Claim

Jones alleges that Defendants Brinson and Griffin violated his Fourth Amendment rights by subjecting him to an unlawful seizure when the stop extended beyond the initial pat down search and also contends that this seizure transformed into an unlawful arrest without probable cause. (Doc. 15 at 10, 15.) The Eleventh Circuit explained in *U.S. v. Perkins*:

> The Supreme Court has identified at least three separate categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual, and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick*, 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio*, 392 U.S. 1 (1968); and (3) technical arrests, full-blown searches, or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois*, 422 U.S. 590 (1975).

348 F.3d 965, 969 (11th Cir. 2003) (citations modified).

When a vehicle is stopped by a law enforcement officer in a traffic stop, both the driver and the passengers are seized within the meaning of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 251 (2007). Courts have consistently upheld roadblocks and checkpoints as lawful stops akin to investigatory stops in the second category described by the Eleventh Circuit. *E.g.*, *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990); *U.S. v. McFayden*, 865 F.2d 1306 (D.C. Cir. 1989).

During the course of a traffic stop, officers "may order the driver to get out of the vehicle without violating the Fourth Amendment" because the government has a "legitimate and weighty" interest in officer safety and requiring a driver to exit his vehicle during a lawful stop constitutes a *de minimis* intrusion. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977). Furthermore, following the reasoning of *Terry v. Ohio*, once a vehicle is stopped, a driver may be patted down for weapons. *Id.* at 112. Jones does not contest and the foregoing supports that the initial vehicle stop and pat down search were lawful under the Fourth Amendment.

However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). In determining the reasonableness of a stop, a court should consider "(i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and expertise." *United States v. Mendenhall*, 446 U.S. 544, 561 (1980). The Eleventh Circuit has recognized certain facts, such as "an officer's not taking the detained individual to a station or office, not conducting a full search of the person, or not touching the individual," that indicate that a stop was investigatory rather than an arrest requiring probable cause. *Courson v. McMillian*, 939 F.2d 1479, 1492 (11th Cir. 1991) (citations omitted). On the other hand, a seizure may require probable cause where certain other factors are present, such as: "the blocking of an individual's path or the impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the

officers physically restrained the individual." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989).

The Court therefore considers the factors that Jones alleges transformed his detention into an arrest that should have been supported by probable cause. These factors include: the stop's duration of between an hour and an hour and a half; the officers' allowing Jones' vehicle and companions to leave; the officers' giving Jones' cell phone to one of his companions, who then left; and the roadside strip search. (Doc. 15 at 15.)

The Court first considers whether the duration of the stop transformed the stop into an arrest under clearly established law. "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Arizona v. Johnson*, 555 U.S. 323, 325 (2009). However, such a stop may become unreasonable where officers' inquiries measurably extend the duration of the detention. *Id.*; *see also United States v. Pruitt*, 174 F.3d 1215 (11th Cir.1999). In *U.S. v. Sharpe*, the Supreme Court emphasized the impossibility of devising a bright line rule for when the duration of a stop transforms it from a *Terry* stop to a stop requiring probable cause. 470 U.S. 675, 685 (1985). In *Pruitt*, the Eleventh Circuit held that a detention was unconstitutional where an officer delayed writing a speeding ticket for nearly an hour and a half while a he waited for the arrival of a drug dog. *Id.* In contrast, in *U.S. v. Hardy*, the court held that a *Terry* stop lasting fifty minutes was not unconstitutional where the stop was extended while officers waited for and utilized a drug dog. 855 F.2d 753 (11th Cir. 1988). The Court finds that there is, in fact, no bright line rule, and that stops lasting as long as Jones' alleged stop lasted have been found to be both lawful and unlawful under various circumstances. Furthermore, Jones himself alleges the articulable suspicion by which the officers justified the continued detention of Jones –the officers' smelling marijuana. (Doc. 15 at 5.) The facts as alleged indicate that the officers were acting on more than an "unsupported hunch." *Pruitt*, 174 F.3d at 1221. The Court finds, therefore, that the duration of the stop alone did not violate clearly established law such as to strip Brinson and Griffin of their qualified immunity.

The Court next considers whether the officers' releasing Jones' driver and companions, along with his cell phone, transformed the stop into an arrest under clearly established law. The Court finds that these actions did not transform the stop into an arrest. While the officers' releasing Jones' companions along with the vehicle he was travelling in could be considered "impeding his progress," the Court finds that Jones has not alleged that he was subjected by Brinson and Griffin to "restraints comparable to those associated with a formal arrest," such as handcuffs nor that the officers at any time drew their weapons. *United State v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004). Factors such as relatively short duration and the public location of the stop support the idea that a traffic stop is not an arrest requiring probable cause because these factors diminish officers' inherent intimidating power. *United States v. Acosta*, 363 F.3d 1141, 1149-50 (11th Cir. 2004). According to Jones' amended complaint, these factors were present in this case. Jones was allowed to call his companions to pick him up as soon as he was told he was free to go. The Court finds that these actions alone could not have transformed the stop into an arrest requiring probable cause and that Jones has not alleged a constitutional violation with regard to these actions don't by Brinson and Griffin.

Finally, the Court considers the strip search conducted by Edmond. The Court finds that even if the strip search violated Jones' Fourth Amendment right to be free from unreasonable searches and seizures, Brinson and Griffin cannot be liable for this violation because Jones does not allege that Brinson or Griffin ordered or participated in the strip search.

Taking as true the fact alleged by Jones that Brinson was the officer in charge at the roadblock, supervisory officials are not automatically liable under Section 1983 for unconstitutional acts of their subordinates on the basis of supervisory liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Supervisory liability is only imposed where the supervisor participates in the unconstitutional conduct or where there is a causal connection between the supervisor's actions and the alleged constitutional violation. *Id.* Jones has not alleged that Brinson personally participated in the strip search. Nor does Jones allege a causal connection, such as a custom or policy, notice of a history of abuse by Edmonds sufficient

to put Brinson on notice, or an order to Edmond to conduct the search. To the contrary, Jones alleges that after the search Brinson told Edmond that he should not have performed the strip search. Brinson, therefore, cannot be held liable on a theory of supervisory liability. Jones' supervisory liability theory does not allege a constitutional violation by Brinson.

Jones also alleges that Brinson and Griffin are liable for failing to intervene in the strip search. The Court finds that both are entitled to qualified immunity regarding this claim.  In the excessive force context, an officer who merely stands by while another officer commits a constitutional violation is liable if he is "in a position to intervene." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986).  However, even if Brinson and Griffin were in a position to intervene, the law at the time of this incident was not clearly established as to whether they had a duty to intervene under these circumstances involving a strip search that allegedly constituted an unreasonable search under the Fourth Amendment rather than an excessive force claim. *See Tarantino v. Citrus County Government*, 2014 WL 4385550 at *11-14 (M.D. Fla. 2014) (outlining cases addressing failure to intervene both strip search and excessive force contexts and concluding that the law at the time of an incident that occurred on July 17, 2011 was unclear as to whether officers had a duty to intervene in an unlawful strip search).

The Court agrees with the *Tarantino* court's conclusion that failure to intervene liability may be a viable theory of liability in Fourth Amendment unlawful search and seizure claim but that the law at the time of this incident, which occurred less than a year after the *Tarantino* incident, was not clearly established. *Id. See also Lives v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (noting that "other circuits recognized a duty to intervene outside of the excessive force context" but that in *Jones v. Cannon* "the Eleventh Circuit refused to find a clearly established duty to intervene to stop other constitutional violations") (citing 174 F.3d. 1271, 1286 (11th Cir. 1999)). Defendants Brinson and Griffin, therefore, are entitled to qualified immunity regarding Jones' claim that their failure to intervene in the strip search violated his Fourth Amendment right to be free from unreasonable searches and seizures because the law was not clearly that they had a duty to intervene.

IV.     **Jones' Excessive Force Claim**

Jones alleges that the strip search conducted by Edmond constituted excessive force in violation of the Fourth Amendment and that Brinson and Griffin are liable for failing to intervene. (Doc. 15 at 12.) To state an excessive force claim under the Fourth Amendment, a plaintiff must allege that a seizure occurred and that "the force used to effect the seizure was unreasonable." *Bryan v. Spillman*, 217 Fed. App'x 882, 885 (11th Cir. 2007) (citations omitted). As discussed above, the Court finds that the Defendants did, in fact, "seize" Jones within the meaning of the Fourth Amendment.

The Court finds that it was clearly established law in the Eleventh Circuit at the time of the incident that officers could be liable under the Fourth Amendment for failing to intervene to stop another officer's excessive force. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008). However, the Court finds here that it was not clearly established law at the time of the incident that a strip search executed without any physical contact constitutes excessive force under the Fourth Amendment. Jones pleads no facts indicating that any physical force was used during the strip search. Jones cites *Sims v. Glover*, a Middle District of Alabama decision holding that a forced public strip search could constitute excessive force under the Fourth Amendment. (Doc. 24 at 12 (citing 84 F.Supp.2d 1273 (M.D. Ala. 1999)).) But *Sims* is not controlling in this District and is insufficient to establish clearly that such a search constitutes excessive force such that Brinson and Griffin were on notice that they had a duty to intervene. Neither Jones nor the Court can point to any controlling cases holding that a public strip search constitutes excessive force under the Fourth Amendment. Furthermore, the Eleventh Circuit has held repeatedly that more than *de minimis* force is required to support an excessive force claim under the Fourth Amendment. *E.g.*, *Bryan v. Spillman*, 217 Fed. App'x 882, 886 (11th Cir. 2007); *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000).  Since it was not clearly established law that the strip search constituted an excessive use of force, it follows that Brinson and Griffin cannot be liable for failure to intervene to prevent the search. *See Crenshaw v. Lister*, 556 F.3d 1283, 1293-94 (11th Cir. 2009) (holding that where officer's use of force was not excessive, another officer could not

be liable for failure to intervene). The Court finds, therefore, that Brinson and Griffin are entitled to qualified immunity on Jones' excessive force claim.

**<u>CONCLUSION</u>**

Because the Court finds that Defendant's Brinson and Griffin are entitled to qualified immunity from Jones' Fourth Amendment claims, Defendant Brinson's Motion to Dismiss (Doc. 7) and Motion to Stay Discovery (Doc. 20) are **DISMISSED as moot** and Defendant Brinson's Motion to Dismiss First Amended Complaint (Doc. 19) and Defendant Griffin's Motion to Dismiss (Doc. 22) are **GRANTED** as to each of Plaintiff's claims against them. All of Plaintiff's claims against Defendant Vincent Edmond remain pending, and the stay on discovery is hereby lifted.

**SO ORDERED**, this <u>7th</u> day of November, 2014.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**
